1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**
9                  **SOUTHERN DISTRICT OF CALIFORNIA**
10

11   WHITTIER BUCHANAN,                    Civil No.    08cv1290 BTM (WVG)
     CDCR #K-02554
12
                                Plaintiff,  **ORDER DENYING PLAINTIFF'S**
13                                          **MOTION FOR SUMMARY**
                                            **JUDGMENT AND GRANTING IN**
14       vs.                                **PART AND DENYING IN PART**
                                            **DEFENDANTS' PARTIAL CROSS-**
15                                          **MOTION FOR SUMMARY**
                                            **JUDGMENT**
16   E. GARZA; L. FUGA; R. BAKER;
     R. LIMON; A. SALCEDO; D. HODGE,        **[ECF Nos. 103, 106]**
17
                                Defendants.
18

19

20

21                                   **I.**

22                      **PROCEDURAL BACKGROUND**

23          Whittier Buchanan ("Plaintiff"), a state prisoner currently incarcerated at Kern Valley

24   State Prison located in Delano, California, proceeding pro se and *in forma pauperis*, has filed

25   this civil rights action pursuant to 42 U.S.C. § 1983.  Defendants initially moved to dismiss

26   Plaintiff's First Amended Complaint in 2010.  The Court issued a ruling in which the Court

27   dismissed all claims against Defendants Verkouteren, Garcia, Pederson and Contreras without

28   leave to amend.  *See* July 27, 2010 Order at 11.  The Court also granted Defendants' Motion

to Dismiss Plaintiff's access to courts claim, conspiracy claim and all state law claims.  *Id.*
Defendants Sterling and Grannis brought a second Motion to Dismiss as they had been served
with Plaintiff's First Amended Complaint after the initial Defendants had moved to dismiss the
claims against them.  On October 15, 2010, the Court dismissed all claims against Defendants
Sterling and Grannis.  *See* Oct. 15, 2010 Order at 12.  Accordingly, the only remaining
Defendants in this action are Garza, Fuga, Baker, Limon, Salcedo and Hodge.  The remaining
claims are Plaintiff's Eighth Amendment excessive force, Eighth Amendment deliberate
indifference to serious medical needs and retaliation claims.

Plaintiff filed a Motion for Summary Judgment as to all claims on August 9, 2011 [ECF
No. 103].  Defendants Garza, Fuga, Baker, Limon and Salcedo filed a Cross-Motion for Partial
Summary Judgment as to Plaintiff's Eighth Amendment deliberate indifference and retaliation
claims on September 30, 2011 [ECF No. 106].  The Court notified Plaintiff of the requirements
for opposing summary judgment pursuant to *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir.
1988) and *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998) (en banc) [ECF No. 112].  All parties
have filed an Opposition to the respective Motions [ECF Nos. 108, 114].  Neither party has filed
a Reply to either Opposition.

## II.

### FACTUAL BACKGROUND[1]

In his First Amended Complaint, Plaintiff alleges that the events that gave rise to this
action occurred while he was incarcerated at the Richard J. Donovan Correctional Facility
("RJD") from February 7, 2007, to October 23, 2007.  (*See* FAC at 1.)  In 2007, Plaintiff had
a pending lawsuit against the California Substance Abuse Treatment Facility ("CSATF") for
which he requested that Defendant Sterling, the Legal Technician Assistant, provide him with
copies of legal documents.  (*Id.* at 4.)  Plaintiff claims that Defendant Sterling's "lack of legal
assistance" caused Plaintiff to "miss his Court deadline."  (*Id.*)  Because he claims that

---

[1] The Court refers to the following facts based only on Plaintiff's version of the events as set forth in his First Amended Complaint.  To the extent that Defendants offer a different version of the facts, that will be noted in the discussion and analysis set forth below.

1  Sterling's actions "hindered his efforts to process his legal claims," Plaintiff filed an

2  administrative grievance against Sterling.  (*Id.*)

3      Plaintiff claims that when Sterling became aware of Plaintiff's grievances, she began to

4  lose or misplace Plaintiff's legal documents and refused him access to the prison law library.

5  (*Id.*)  As a result, Plaintiff's lawsuit was dismissed.  (*Id.*)

6      Plaintiff further claims that Defendants Salcedo, Baker and Limon "were not supplying

7  Plaintiff with indigent envelopes," so he filed an administrative grievance against Salcedo,

8  Baker and Limon.  (*Id.*)  Plaintiff informed Salcedo that he had pending litigation, which is why

9  he needed the envelopes, and requested her assistance to process his legal mail.  (*Id.*)  Because

10  Salcedo refused to do so, Plaintiff filed another administrative grievance against Salcedo.  (*Id.*)

11  Plaintiff alleges that "in retaliation, Defendant Salcedo conspired with Defendants' Baker and

12  Limon" to not "pick up/process Plaintiff's legal mail to the courts."  (*Id.*)

13      On May 30, 2007, Plaintiff was standing outside of the "program office" when

14  Defendant Garza emerged from the office and "gave Plaintiff a direct order to 'stop filing

15  602's!'"  When Plaintiff attempted to explain why he needed to file the grievances, Garza

16  "abruptly cut Plaintiff off yelling '[racial expletive], you don't have any rights, you are a

17  criminal, criminals don't have rights.'"  (*Id.*)  Garza continued to use racially derogatory

18  language towards him.  (*Id.*)  Plaintiff claims Defendant Garza "yanked his [stick] from his

19  waistbelt" and ordered Plaintiff to "get down." (*Id.*)  Plaintiff complied by laying down on his

20  stomach at which time Garza ordered Defendant Fuga and "Jane Doe" to "cuff him."  (*Id.*)

21  Plaintiff informed Defendants Fuga and Doe as they "began to jerk Plaintiff's arms behind his

22  back" that he had a medical chrono indicating that Plaintiff had a disability that provided for

23  him to be handcuffed in the front and not behind his back due to a herniated disk.  (*Id.*)

24  Defendants Fuga and Doe ignored this information and were "kneeing Plaintiff roughly in his

25  back, neck and the lower parts" of his body.  (*Id.*)  Plaintiff claims that a number of medical

26  care employees and correctional officers observed this altercation but failed to protect him from

27  injury.

28  / / /

Plaintiff cried out "you're hurting me." (*Id.* at 6.)  "Upon hearing this, Defendant Garza gave Defendants Jane Doe and Fuga a direct order to 'hurt him.'" (*Id.*)   Plaintiff claims that Fuga and Doe "became even more malicious and sadistic" by "jerk[ing] twice on Plaintiff's left arm" which resulted in an "audible popping sound." (*Id.*)  Plaintiff claims Defendant Garza continued to yell racial expletives towards him and ordered Fuga and Doe to stand Plaintiff up. (*Id.*)  As Plaintiff was crying, he claims that Defendant Garza "saw that he had actually 'silenced' Plaintiff" and ordered Fuga to take Plaintiff back to his cell. (*Id.*)  Plaintiff asked Fuga to take him to the infirmary as he was in "extreme pain" but Fuga refused.

On August 16, 2007, Plaintiff claims that he was asked by Defendant Hodge to "snitch" on another inmate. (*Id.*)  When Plaintiff refused, Hodge took Plaintiff's prescription sunglasses. (*Id.*)  Because Plaintiff continued to refuse to be a "snitch," and due to the fact that Plaintiff filed a grievance against him, Hodge began acts of retaliation against Plaintiff. (*Id.*)  Plaintiff claims that Hodge would take personal property from Plaintiff and give them to other inmates. (*Id.* at 7.)  Plaintiff alleges that Hodge would refuse to allow Plaintiff to attend church services or sing in the prison's gospel choir.  (*Id.*)

### III.

#### DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**A.    Summary Judgment -- Standard of Review**

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as matter of law.  FED. R. CIV. P. 56(a).  The moving party has the initial burden of demonstrating that summary judgment is proper.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970).  The burden then shifts to the opposing party to provide admissible evidence beyond the pleadings to show that summary judgment is not appropriate.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 324 (1986).  The opposing party's evidence is to be believed, and all justifiable inferences are to be drawn in his favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

However, to avoid summary judgment, the opposing party cannot rest solely on conclusory allegations of fact or law.  *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986);

*Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). Instead, the nonmovant must designate which specific facts show that there is a genuine issue for trial. *Anderson*, 477 U.S. at 256; *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir. 1989).

Cross-motions for summary judgment do not necessarily mean that there are no disputed issues of material fact, and do not necessarily permit the court to render judgment in favor of one side or the other. *Starsky v. Williams*, 512 F.2d 109, 112 (9th Cir. 1975). Instead, the court must consider each motion separately to determine whether any genuine issue of material fact exists. *Id.* A "material" fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). The materiality of a fact is thus determined by the substantive law governing the claim or defense. *Anderson*, 477 U.S. at 252; *Celotex*, 477 U.S. at 322; *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Anderson*, 477 U.S. at 248).)

**B.    General Standards for § 1983 liability**

Section 1983 imposes two essential proof requirements upon a claimant: (1) that a person acting under color of state law committed the conduct at issue; and (2) that the conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States. 42 U.S.C. § 1983.

**C.    Retaliation claims**

First, both Plaintiff and Defendants move for summary judgment in their favor as to Plaintiff's retaliation claims. Of fundamental import to prisoners are their First Amendment "right[s] to file prison grievances," *Bruce v. Ylst*, 351 F.3d 1283, 1288 (9th Cir. 2003), and to "pursue civil rights litigation in the courts." *Schroeder v. McDonald*, 55 F.3d 454, 461 (9th Cir. 1995). Without those bedrock constitutional guarantees, inmates would be left with no viable mechanism to remedy prison injustices. *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005). "And because purely retaliatory actions taken against a prisoner for having exercised those

rights necessarily undermine those protections, such actions violate the Constitution quite apart from any underlying misconduct they are designed to shield." *Id.* (citing *Pratt v. Rowland*, 65 F.3d 802, 806 & n.4 (9th Cir. 1995)).

"[A] viable claim of First Amendment retaliation entails five basic elements:  (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes*, 408 F.3d at 567-68 (footnote omitted) (citing *Resnick v. Hayes*, 213 F.3d 443, 449 (9th Cir. 2000); *Barnett v. Centoni*, 31 F.3d 813, 815-16 (9th Cir. 1994)).

### 1.  First Amendment retaliation claims against Salcedo, Baker and Limon

In his First Amended Complaint, Plaintiff makes allegations that Defendants Salcedo, Baker and Limon retaliated against him because he filed administrative grievances complaining of actions these Defendants had taken.  (*See* FAC at 4; *see also* Pl.'s Memo of Ps & As in Supp. of MSJ at 16.)  Initially, Plaintiff alleges that he requested indigent envelopes from Defendant Salcedo after telling her that he had a lawsuit "pending in the courts."  (FAC at 4.)  Plaintiff alleges that Defendant Salcedo responded to this request by refusing to provide the indigent envelopes and refusing to process his legal mail.  (*Id.*)

On March 1, 20007, Plaintiff filed an administrative grievance claiming that he was "not receiving my monthly allotment of indigent envelopes."  (*See* Pl.'s Opp'n on March 12, 2007, Ex. H, Inmate/Parolee Appeal Form, Log. No. RJD-07-907, dated Mar. 1, 2007.)  On March 12, 2007, prior to receiving the response from his previous grievance,  Plaintiff submitted an administrative grievance claiming Defendant Salcedo refused to process his legal mail.  (*See* Pl.'s Mot., Ex. L, Inmate/Parolee Appeal Form, Log. No. RJD-O7-1095, dated Mar. 12, 2007.)

In May of 2007, Plaintiff claims that there were further incidents in which Defendants Baker and Limon, "acting in agreement with Defendant Salcedo," refused to process his legal mail because Plaintiff had filed a grievance against Defendant Salcedo on March 12, 2007. (FAC at 4.)

However, there are simply insufficient facts in the record to support a retaliatory claim against Defendants Salcedo, Baker or Limon. In order to prevail on Plaintiff's retaliation claim, he "must show that his protected conduct was 'the substantial or motivating factor behind the defendant's conduct." *Brodheim v. Cry*, 584 F.3d 1262, 1271 (9th Cir. 2009) (citing *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989)). Plaintiff argues in his moving papers and Opposition that it was clear that Defendants were retaliating against him by failing to provide indigent envelopes, and he specifically points to the grievance that he filed on March 1, 2007, as evidence of those acts of retaliation. (*See* Pl.'s Opp'n at 7.) However, the initial grievance Plaintiff filed with respect to the alleged lack of indigent envelopes made no mention of retaliatory acts nor did it mention any of the Defendants by name. (*See* Pl.'s Opp'n, Ex. H.) Nowhere in this grievance did Plaintiff ever indicate that he was being denied indigent envelopes by Defendants because he had filed previous civil actions. There is just no evidence in the record which would indicate that Defendants were aware of the previous litigation and that this hypothetical knowledge was the "substantial and motivating factor" behind the alleged denial of indigent envelopes. *Brodheim*, 584 F.3d at 1271.

Second, to the extent that Plaintiff claims that Defendant Salcedo refused to process his legal mail on March 12, 2007, because of the grievance he claimed he filed against Salcedo on March 1, 2007, again, this allegation is unsupported by the record. As stated above, the grievance filed by Plaintiff on March 1, 2007, does not identify any correctional officer by name nor is there any evidence that any of the named Defendants were aware that Plaintiff had filed this grievance. Plaintiff did file a grievance in which he named Defendant Salcedo on March 12, 2007. (*See* Pl.'s Ps & As in Supp. of MSJ, Ex. L). In this grievance, Plaintiff states that Defendant Salcedo refused to process his legal mail on March 12, 2007, which he claims "den[ied] my access to the court(s)." *Id.* Nowhere in that grievance does Plaintiff even suggest that Defendant Salcedo's actions were in retaliation for Plaintiff's exercising his constitutional rights. Plaintiff offers no other evidence to support his claims of retaliation. Moreover, Plaintiff does not allege nor does he point to any evidence in the record that Defendant Salcedo, herself, took any "adverse action" against him following the grievance that he filed on March 12, 2007.

1      In addition, both Baker and Limon have declared that they were unaware that Plaintiff

2  had filed a grievance against either of them "or any other officer." (Declaration of R. Baker at

3  ¶ 8; Declaration of R. Limon at ¶ 7.)  Plaintiff's only allegation with regard to these two

4  Defendants is his claim that Salcedo "told [Baker and Limon] that Plaintiff filed a 602 on her"

5  but he offers no evidence to support this assertion.  (FAC at 4.)   Plaintiff has offered no

6  evidence to support his claim that the alleged refusal to process his legal mail was in retaliation

7  for filing *previous* grievances against other correctional officers.  Rather, Plaintiff argues in his

8  opposition that his retaliation claim against Baker and Limon is supported by a grievance he filed

9  against them on May 23, 2007.  (*See* Pl.'s Opp'n at 5-6, Ex. B, Inmate/Parolee Appeal Form,

10  Log No. RJD-07-1466, dated May 23, 2007.) This grievance complains of behavior that Plaintiff

11  alleges occurred on May 22, 2007, by Defendants Limon and Baker but fails to make any claims

12  that their actions were in retaliation for a grievance filed in March of 2007 against Salcedo.

13  Thus, the Court finds that Plaintiff has offered no evidence to create a triable issue of material

14  fact with regard to his claims of retaliation against Baker, Limon or Salcedo because he has

15  failed to show that his filing of a grievance or previous litigation was the "substantial" or

16  "motivating" factor behind their alleged conduct.  *Soranno's Gasco, Inc.*, 874 F.2d at 1314.

17      Accordingly, Plaintiff's Motion for Summary Judgment as to his retaliation claims against

18  Defendants Baker, Limon and Salcedo is **DENIED** and Defendants' Limon, Baker and

19  Salcedo's partial Cross-Motion for Summary Judgment is **GRANTED** as to Plaintiff's

20  retaliation claims.

### 2.      First Amendment retaliation claims against Hodge

22      Defendant Hodge moves for summary judgment as to the retaliation claims against him.

23  Plaintiff also moves for summary judgment as to this claim.  Plaintiff alleges that Defendant

24  Hodge wanted Plaintiff to "snitch" on another inmate.  (*See* FAC at 6.) When Plaintiff allegedly

25  refused to "snitch," and following Plaintiff's filing of a grievance against Hodge, Plaintiff

26  alleges Hodge began to take his personal items from him and give them to other inmates.  (*Id.*)

27      In support of their Motion, Defendants argue that Plaintiff has not alleged that he was

28  exercising his First Amendment rights.  (*See* Defs.' Memo of Ps & As in Supp. of MSJ at 9.)

1  Specifically, Defendants maintain that the act of refusing to "snitch" does not fall under the

2  purview of the First Amendment. (*Id.*)  The Ninth Circuit has held, in a matter involving an

3  alleged vindictive prosecution, that "there is no constitutional right not to snitch." *Paguio v.*

4  *Acosta*, 114 F.3d 928, 930 (9th Cir. 1997) (citing *United States v. Gardner*, 611 F.2d 770, 773

5  (9th Cir. 1990)).  In addition, it is well settled that in the First Amendment context "a prison

6  inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner

7  or with the legitimate penological objectives of the corrections system." *Pell v. Procunier,* 417

8  U.S. 817, 822 (1974).  However, while it may be true that the refusal to "snitch" is not

9  considered "protected conduct," Plaintiff has also stated that he was retaliated against for filing

10  a 602 against Defendant Hodge. (*See* FAC at 7.)  Thus, it is not the allegation of refusing to

11  snitch that forms the sole basis of Plaintiff's claim of retaliation, it is also his claim that he filed

12  an administrative grievance complaining of Defendant Hodge's insistence that he snitch on a

13  fellow inmate that led to further retaliatory acts by Defendant Hodge. (*See* Pl.'s Memo of Ps &

14  As in Supp. of MSJ, Ex. K, Inmate/Parolee Appeal Form, Log. No. RJD-07-2086, dated August

15  11, 2007.)

16        In their Opposition to Plaintiff's Motion for Summary Judgment, Defendants

17  acknowledge that Plaintiff's allegations in his verified First Amended Complaint as to Defendant

18  Hodge are "disputed." (*See* Defs.' Opp'n at 5.)  They offer the Declaration of Defendant Hodge

19  in which he denies every allegation of retaliatory conduct made by Plaintiff. (*Id.*, Hodge Decl.

20  at ¶¶ 4-8.)  These types of arguments made by Defendants and Plaintiff both would require the

21  Court to make credibility determinations that are not permissible at the summary judgment stage.

22  *See Dominguez-Curry v. Nevada Transp. Dep't*, 424 F.3d 1027, 1036 (9th Cir. 2005).  Thus,

23  there remains a triable issue of material fact as to whether Defendant Hodge retaliated against

24  Plaintiff for exercising his First Amendment rights by filing a grievance against Defendant

25  Hodge.

26        Accordingly, the Court **DENIES** Plaintiff's Motion for Summary Judgment of his

27  retaliation claims against Defendant Hodge and **DENIES** Defendant Hodge's Motion for

28  Summary Judgment of Plaintiff's retaliation claims.

1

**D.    Eighth Amendment - Deliberate Indifference to Serious Medical Needs**

2      Plaintiff and Defendants Garza and Fuga move for summary judgment as to Plaintiff's

3  claims that they acted with deliberate indifference to his serious medical needs.[2]

4                **1.    Standard of Review**

5      The Eighth Amendment prohibits punishment that involves the "unnecessary and wanton

6  infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976) (quoting *Gregg v. Georgia*, 428

7  U.S. 153, 173 (1976)).  The Eighth Amendment's cruel and unusual punishment clause is

8  violated when prison officials are deliberately indifferent to a prisoner's serious medical needs.

9  *Estelle*, 429 U.S. at 105.  "Medical" needs include a prisoner's "physical, dental, and mental

10  health." *Hoptowit v. Ray*, 682 F.2d 1237, 1253 (9th Cir. 1982).

11      To show "cruel and unusual" punishment under the Eighth Amendment, the prisoner must

12  point to evidence in the record from which a trier of fact might reasonably conclude that

13  Defendants' medical treatment placed Plaintiff at risk of "objectively, sufficiently serious" harm

14  and that Defendants had a "sufficiently culpable state of mind" when they either provided or

15  denied him medical care. *Wallis v. Baldwin*, 70 F.3d 1074, 1076 (9th Cir. 1995) (citation and

16  internal quotations omitted).  Thus, there is both an objective and a subjective component to an

17  actionable Eighth Amendment violation. *Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002);.

18       Although the "routine discomfort inherent in the prison setting" is inadequate to satisfy

19  the objective prong of an Eighth Amendment inquiry, *see Johnson v. Lewis*,  217 F.3d 726, 731

20  (9th Cir. 1999), the objective component is generally satisfied so long as the prisoner alleges

21  facts to show that his medical need is sufficiently "serious" such that the "failure to treat [that]

22  condition could result in further significant injury or the unnecessary and wanton infliction of

23  pain." *Clement*, 298 F.3d at 904 (quotations omitted).

24  / / /

25  / / /

26  / / /

27  _____

28      [2] Defendants have not moved for summary judgment with regard to Plaintiff's Eighth
Amendment excessive force claims.

However, the subjective component requires the prisoner to demonstrate facts which show that the officials had the culpable mental state, which is "'deliberate indifference' to a substantial risk of serious harm." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998) (quoting *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)).  "Deliberate indifference" is evidenced only when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.  Inadequate treatment due to "mere medical malpractice" or even gross negligence, does not amount to a constitutional violation.  *Estelle*, 429 U.S. at 106; *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990).

While deliberate indifference can be manifested if a doctor or prison guard intentionally denies or delays access to medical care or otherwise interferes with medical treatment already prescribed, *see Estelle*, 429 U.S. at 104-05, the delay must also lead to further injury or be somehow harmful.  *McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992) (noting that harm caused by delay need not necessarily be "substantial"), *overruled on other grounds, WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997).

### 2.  Application to Plaintiff's Allegations

Here, Plaintiff alleges an altercation occurred between himself and Defendants Garza and Fuga on May 30, 2007.  (*See* FAC at 6.)  Following the altercation, Plaintiff claims he requested that Defendant Fuga "take him to the infirmary as [Plaintiff was] in extreme pain."  (*Id.*)  Plaintiff further claims that "Defendant Fuga denied Plaintiff's request for medical care with reckless and deliberate indifference."  (*Id.*)  While those are the allegations in Plaintiff's verified First Amended Complaint, Defendants argue that the evidence in the record does not support a finding that Plaintiff had a serious medical need on May 30, 2007, and thus cannot overcome the first hurdle in establishing an Eighth Amendment deliberate indifference claim.  (*See* Defs.' Memo of Ps & As in Support of MSJ at 14-15.)

/ / /

/ / /

1    Defendants submit the Declaration of D. Salinas, Health Records Technician II at Kern

2    Valley State Prison to support their claim that Plaintiff has no evidence of a serious medical

3    need.   Specifically, Defendants contend that while Plaintiff alleges that he suffered from

4    shoulder pain and hearing loss as a result of the altercation on May 30, 2007, he did not actually

5    request any medical attention until thirteen days later.   (*See* Salinas Decl., Ex. A.)   In this

6    Exhibit, Defendants attach Plaintiff's "Requests for Medical Care at R.J. Donovan State Prison,"

7    dated after May 30, 2007.  (Salinas Decl. at ¶ 5.)

8    Defendants maintain that records reflect that Plaintiff's claims of shoulder and back

9    injuries were "pre-existing" and not the cause of the altercation that occurred on May 30, 2007.

10   Plaintiff does not dispute this claim and acknowledges that he had these pre-existing medical

11   conditions but he contends that the altercation resulted in a "dislocated shoulder" for which

12   Defendants refused to provide treatment.  (*See* Pl.'s Memo of Ps & As in Supp. of MSJ at 13.)

13   In support of Plaintiff's claim he submits a document entitled "Comprehensive Accommodation

14   Chrono" which has an apparent notation indicating that Plaintiff has a dislocated shoulder on

15   July 13, 2007.  (*See* Pl.'s Opp'n to Defs.' MSJ, Exhibit K, Comprehensive Accommodation

16   Chrono, dated July 13, 2007.)  Plaintiff also claims it was "days later" that he suffered serious

17   back pain.  (Pl.'s Memo of Ps & As in Supp. of MSJ at 13, 14.)

18   Here, Defendants argue, and the Court agrees, there is no evidence in the record that

19   Defendants were aware of a serious medical need on May 30, 2007.  The crux of Plaintiff's

20   allegations is the alleged failure of Defendants to provide access to medical treatment on May

21   30, 2007.  Plaintiff's submission of a document that suggests a dislocated shoulder several weeks

22   after the May 30, 2007, incident, which Defendants correctly point out is not supported by any

23   diagnosis in Plaintiff's medical records, and his own acknowledgment that the back pain came

24   "days later," indicate that there is no evidence in the record to show that Plaintiff suffered from

25   a serious medical need on May 30, 2007.  (*Id.*)  While Plaintiff in his moving papers and

26   Opposition appears to broaden his claim to an allegation of the denial of medical care for the

27   weeks following May 30, 2007, his only allegation in his First Amended Complaint is a claim

28   of denial of medical care on May 30, 2007, for failing to take him to the infirmary.  Plaintiff

1    provides no evidence to demonstrate how any of the named Defendants were responsible for his

2    medical care in the days, weeks or months following this incident on May 30, 2007.   Thus, the

3    evidence is insufficient to create a genuine issue of material fact to show that Plaintiff's medical

4    needs were objectively "serious" on May 30, 2007.  *See Estelle*, 429 U.S. at 105.

5             In addition, the record before the Court does not show any triable issue as to the

6    subjective component of an Eighth Amendment inadequate medical care claim against

7    Defendants.   *See Frost*, 152 F.3d at 1128; *Farmer*, 511 U.S. at 837.   In order to justify trial,

8    Plaintiff must point to evidence in the record to show that Defendants were "deliberately

9    indifferent" to his serious medical needs, *i.e*, that Defendants knew, yet consciously disregarded

10   his pain or the need to provide him constitutionally adequate care.   *See McGuckin,* 974 F.2d

11   at 1060.  This "subjective approach" focuses only "on what a defendant's mental attitude actually

12   was." *Farmer*, 511 U.S. at 839.   Because Plaintiff has failed to provide evidence to dispute

13   Defendants' assertion that Plaintiff did not have a serious medical need on May 30, 2007, the

14   Court finds no genuine issues of material fact exist as to whether Defendants acted with

15   deliberate indifference to Plaintiff's serious medical needs.   *Estelle*, 429 U.S. at 105.

16   Accordingly,  the Court **DENIES** Plaintiff's Motion for Summary Judgment and **GRANTS**

17   Defendants' Partial Cross-Motion for Summary Judgment as to Plaintiff's  Eighth Amendment

18   deliberate indifference to serious medical needs claims.

19        **E.    Qualified Immunity**

20             Defendants move for qualified immunity in regard to Plaintiff's retaliation claims and

21   Eighth Amendment deliberate indifference to serious medical needs claim.  (*See* Defs.' Memo

22   of Ps & As in Supp. of X-MSJ at 17-18.)  Because the Court has found no triable issue of fact

23   exists as to Plaintiff's Eighth Amendment deliberate indifference claims or Plaintiff's retaliation

24   claims against Defendants Limon, Baker or Salcedo, it need not reach any issues regarding

25   qualified immunity on those claims.  *See Saucier v. Katz*, 533 U.S. 194, 201 (2001) ("If no

26   constitutional right would have been violated were the allegations established, there is no

27   necessity for further inquiries concerning qualified immunity."); *County of Sacramento v. Lewis*,

28   523 U.S. 833, 841 n.5 (1998) ("[T]he better approach to resolving cases in which the defense of

1    qualified immunity is raised is to determine first whether the plaintiff has alleged the deprivation

2    of a constitutional right at all.").

3           However, Defendant Hodge moves for qualified immunity with respect to the remaining

4    retaliation claim made by Plaintiff.  "Government officials enjoy qualified immunity from civil

5    damages unless their conduct violates 'clearly established statutory or constitutional rights of

6    which a reasonable person would have known.'" *Jeffers v. Gomez*, 267 F.3d 895, 910 (9th Cir.

7    2001) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  When presented with a

8    qualified immunity defense, the central questions for the court are: (1) whether the facts alleged,

9    taken in the light most favorable to Plaintiff, demonstrate that the Defendant's conduct violated

10   a statutory or constitutional right; and (2) whether the right at issue was "clearly established" at

11   the time it is alleged to have been violated.  *Saucier*, 533 U.S. at 201.  "These two questions

12   may be considered in either order."  *Rosenbaum v. Washoe County*, 654 F.3d 1001, 1006 (9th

13   Cir. 2011) (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

14          Here, Defendant Hodge makes a very brief argument in support of qualified immunity

15   by stating that "Plaintiff's retaliation claim against him fails as a matter of law, since he does not

16   allege that Hodge retaliated against him for exercising his First Amendment rights."  (Defs.'

17   Memo of Ps & As in Supp. of MSJ at 19.)  This statement is not accurate.  Plaintiff alleges in

18   his verified First Amended Complaint that Defendant Hodge "retaliated against Plaintiff because

19   he would not 'snitch' on another inmate, *and because he filed a 602 on him concerning that*

20   *incident*." (FAC at 7 (emphasis added).)  As stated above, for qualified immunity purposes, the

21   Court must review the factual allegations in the light most favorable to Plaintiff to determine

22   whether Defendant Hodge's conduct violated Plaintiff's constitutional rights.  Plaintiff claims

23   he had adverse actions taken against him by Defendant Hodge for filing an administrative

24   grievance against Hodge.  (*See* FAC at 7, 11.)  The Court finds that these claims are sufficient

25   to deny qualified immunity as to the first prong.

26          Defendants provide no argument to support the second prong of the qualified immunity

27   analysis, which is whether the right to be free from retaliation was "clearly established" at the

28   time it is alleged to have been violated.  *Saucier*, 533 U.S. at 201.  The Ninth Circuit opinion

clearly setting forth the elements of a retaliation claim in a prison setting was decided in 2005. *See Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005). The factual allegations in this case arose in 2007. (*See* FAC at 1.) Because Defendant Hodge provides no support otherwise, the Court finds that the law relating to retaliation claims in the prison setting was "clearly established" at the time the alleged acts of retaliation had occurred. Thus, the Court finds that Defendant Hodge is not entitled to qualified immunity.

### F.    Eighth Amendment Excessive Force claims

Finally, Plaintiff moves for summary judgment in his favor as to his Eighth Amendment excessive force claims. The "core judicial inquiry," when a prisoner alleges the excessive use of force under the Eighth Amendment, is "not whether a certain quantum of injury was sustained, but rather "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. at 1, 7 (1992); *see also Whitley v. Albers*, 475 U.S. 312, 319-321, (1986). "When prison officials maliciously and sadistically use force to cause harm," the Supreme Court has recognized, "contemporary standards of decency always are violated . . . whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." *Hudson*, 503 U.S. at 9; *see also Wilkins v. Gaddy*, 130 S. Ct. 1175, 1178-79 (2010) ("An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury.")

Thus, "[i]n determining whether the use of force was wanton and unnecessary," the Court must "evaluate the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Hudson*, 503 U.S. at 7 (internal quotation marks and citations omitted).

/ / /

/ / /

/ / /

1    Here, Plaintiff contends that he was complying with the orders by Defendants when they

2    "jerk[ed] his arms behind his back," and later "jerked twice on his left arm" causing an "audible

3    popping sound."  (*See* FAC at 5-6.; *see also* Antley Decl., Pl.'s Depo at 14:1-7.)  Defendants

4    dispute Plaintiff's version of the incident and have provided declarations in which they state that

5    Plaintiff was argumentative, aggressive and they believed Plaintiff was a "threat to [their] safety

6    and to the safety and security of the institution and the surrounding staff and other inmates."

7    (*See* Decl. of E. Garza at ¶ 4.)

8    Thus, based on this material contradictory testimony, the Court finds genuine issues of

9    material fact exist as to whether Defendants used force in a good faith effort to maintain or

10   restore order, or instead, used force with a "malicious" and "sadistic" intent to do Plaintiff harm.

11   *Hudson*, 503 U.S. at 7; *see also Anderson*, 477 U.S. at 255 (noting that "[c]redibility

12   determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts

13   are jury functions, not those of a judge" resolving a motion for summary judgment).

14   Accordingly, Plaintiff's Motion for Summary Judgment of his Eighth Amendment

15   excessive force claims is **DENIED**.  Because Defendants did not move for summary judgment

16   as to this claim, this claim remains in the action.

17                                                  **V.**

18                                **CONCLUSION AND ORDER**

19   For all the reasons set forth above, the Court hereby:

20   (1)    **DENIES** Plaintiff's Motion for Summary Judgment in its entirety [ECF No. 103];

21   (2)    **GRANTS** Defendants' Limon, Baker and Salcedo's partial Cross-Motion for

22   Summary Judgment as to Plaintiff's retaliation claims [ECF No. 106];

23   (3)    **DENIES** Defendant Hodge's partial Cross-Motion for Summary Judgment as to

24   Plaintiff's retaliation claims;

25   (4)    **GRANTS** Defendants' partial Cross-Motion for Summary Judgment as to

26   Plaintiff's Eighth Amendment deliberate indifference to serious medical needs claims; and

27   (5)    **DENIES** Defendant Hodge's partial Cross-Motion for Summary Judgment on

28   qualified immunity grounds.

1    Because there are no remaining claims against Defendants Salcedo, Baker and Limon and

2    there is no just reason for delay, the Clerk of Court is directed to enter a final judgment as to

3    these Defendants pursuant to FED. R. CIV. P. 54(b).

4    **IT IS SO ORDERED.**

5

6    DATED:  March 27, 2012

7    _____

8    BARRY TED MOSKOWITZ, Chief Judge
     United States District Court

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

08cv1290 BTM (WVG)